**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| HAYTHAM FAWZI SALAH MADHOUN, | § § § | |
| Petitioner, | § § | |
| | § | CAUSE NO. EP-25-CV-312-KC |
| v. | § § | |
| EL PASO PROCESSING CENTER, | § § | |
| Respondent. | § § | |

| | | |
|---|---|---|
| HAYTHAM FAWZI SALAH MADHOUN, | § § § | |
| Petitioner, | § § | |
| | § | CAUSE NO. EP-25-CV-315-KC |
| v. | § § | |
| ON HABEAS CORPUS, | § § | |
| Respondent. | § § | |

| | | |
|---|---|---|
| HAYTHAM FAWZI SALAH MADHOUN, | § § § | |
| Petitioner, | § § | |
| | § | CAUSE NO. EP-25-CV-334-KC |
| v. | § § | |
| ICE PROCESSING CENTER, | § § | |
| Respondent. | § § | |

| | |
|---|---|
| HAYTHAM FAWZI SALAH MADHOUN, § § § | |
| Petitioner, § § | CAUSE NO. EP-25-CV-351-KC |
| v. § § | |
| PAM BONDI et al., § § | |
| Respondents. § | |

| | |
|---|---|
| HAYTHAM FAWZI SALAH MADHOUN, § § § | |
| Petitioner, § § | |
| v. § | CAUSE NO. EP-25-CV-425-KC |
| IMMIGRATION AND CUSTOMS ENFORCEMENT, § § § § | |
| Respondent. § | |

# ORDER

On this day, the Court considered Petitioner Haytham Fawzi Salah Madhoun's Petition for a Writ of Habeas Corpus ("Pet.") under 28 U.S.C. § 2241, ECF No. 1.[1]

## I. BACKGROUND

Madhoun is a Palestinian refugee born in Israel who initially entered the U.S. on a student visa in 2006. *Id.* at 12. At some point, Madhoun adjusted his status to lawful permanent resident ("LPR"). Decl. Asst Field Office Dir. Martin A. Sarellano Jr. ("Sarellano Decl.") ¶ 4, ECF No. 14-1. In 2017, Madhoun was convicted of burglary in Mississippi and served a five-year sentence, until his release in December 2019. Pet. 5–7, Case No. 3:25-cv-351-KC, ECF No.

---

[1] In this Order in these consolidated cases, all citations are to the docket in the lead case, number 3:25-cv-312-KC, unless otherwise specified.

2

1-1. Following this conviction, in April 2020, ICE arrested Madhoun and initiated deportation proceedings. *Id.* at 6; Sarellano Decl. ¶ 5. On July 14, 2020, an Immigration Judge ordered that Madhoun be deported to Jordan. Pet. 6; Sarellano Decl. ¶ 6. Madhoun's deportation was not effectuated "because removal was not reasonably foreseeable at that time"—instead he was released under an order of supervision in September or October 2020. Sarellano Decl. ¶ 6; Pet. 6, Case No. 3:25-cv-351-KC. Then, in early 2025, Madhoun was arrested in El Paso, Texas for theft. Sarellano Decl. ¶ 7. After this arrest, ICE took Madhoun into immigration custody again on February 4, 2025, and he is currently detained at the El Paso Processing Center. Pet. 1, 5.

Madhoun has now been detained for nearly eight months. Madhoun was born in Israel, but he is Palestinian. Sarellano Decl. ¶ 4. Because of this, Madhoun claims Israel will not issue him a travel document. Pet. 6. This has created problems in effectuating his deportation. ICE avers that "circumstances have changed such that there is significant likelihood of removal." Sarellano Decl. ¶ 7. Yet, since Madhoun has been detained, ICE has been unable to secure travel documents ("TD") for Madhoun. *Id.* First, ICE submitted a TD request to Jordan, as that is the country to which he was ordered removed, but Jordan refused to issue any TD because Madhoun is not a Jordanian citizen. *Id.* Then, on June 4, 2025, ICE submitted a TD request to Israel, which is still pending. *Id.*

Meanwhile, on May 14, 2025, ICE made a post-removal order custody determination to continue Madhoun's detention because (1) he is subject to a final order of removal and thus a flight risk, (2) he is "a danger to society" because of his criminal history, (3) he violated his previous order of supervision, and (4) he received disciplinary infractions while in ICE custody for "physical encounters that could cause personal injury to another." *Id.* ¶ 8. Now, ICE states that it does not anticipate any impediments in securing a TD from Israel "in the reasonably

3

foreseeable future," but if Israel refuses the request, Madhoun could be deported to a third country. *Id.* ¶ 9.

Madhoun challenges his continued immigration detention. Pet. 6–7. Madhoun thus seeks a writ of habeas corpus under 28 U.S.C. § 2241, requesting release under conditions of supervision. The Court ordered Respondents to show cause why the application for a writ of habeas corpus should not be granted. Aug. 15, 2025, Order, ECF No. 6. Respondents filed a Response, ECF No. 14, arguing that Madhoun's continued detention is lawful as he is subject to a final order of removal. Resp. 8. Madhoun filed a Reply, ECF No. 17.

## II.   ANALYSIS

Generally, when a noncitizen is ordered removed from the United States, removal should occur within ninety days. 8 U.S.C. § 1231(a)(1)(A). That removal period begins on the latest of three dates: (1) when the removal order becomes final, (2) when there is a final order in a stay of removal, or (3) when the noncitizen is released from non-immigration custody, such as the completion of a criminal sentence. *See id.* § 1231(a)(1)(B). During this removal period, "the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). The removal period may be extended in at least three circumstances. Relevant here, a noncitizen may be detained beyond the removal period if he is "(1) inadmissible, (2) removable as a result of violations of status requirements, entry conditions, or the criminal law, or for national security or foreign policy reasons, or (3) a risk to the community or unlikely to comply with the removal order." *Johnson v. Guzman Chaves*, 594 U.S. 523, 528–29 (2021) (citing 8 U.S.C. § 1231(a)(6)).

If any of these grounds apply, the statute imposes no limit on the time a person may be detained. Because "[a] statute permitting indefinite detention . . . would raise a serious constitutional problem" the Supreme Court has "read an implicit limitation" into the statute and

has held that a noncitizen may only be detained for "a period reasonably necessary" to effectuate their removal. *Zadvydas v. Davis*, 533 U.S. 678, 689–90 (2001). This period is presumptively six months. *Id.* at 701. After the presumptively reasonable period and once the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must rebut this showing or release the noncitizen. *Id.*

Following *Zadvydas*, the Department of Homeland Security ("DHS") implemented regulations requiring officials to conduct a post-order custody review ("POCR") before the ninety-day removal period expires if the noncitizen's removal cannot be accomplished within the specified time frame. 8 C.F.R. § 241.4(h)(1), (k)(1)(i). During the POCR, officials review the detainee's records and other evidence and consider a long list of factors geared toward determining (1) flight risk, (2) danger to the community, (3) ability to adjust to life in the community, and (4) likelihood of obtaining travel documents. *Id.* at § 241.4(e)–(g). After the initial POCR, if the noncitizen is not released or removed shortly thereafter, a second review must be done about three months later. *Id.* at § 241.4(k)(2)(ii).

To date, Madhoun has been in ICE custody for nearly eight months. Thus, the presumptively reasonable period of detention under *Zadvydas* has only recently expired, and Madhoun must show there is no significant likelihood of his removal in the reasonably foreseeable future. *See Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006); *see also Hernandez-Esquivel v. Castro*, No. 5:17-cv-564-RBF, 2018 WL 3097029, at *5 (W.D. Tex. June 22, 2018). If he can do this, then the Respondents must rebut the showing or release Madhoun. Madhoun states that his removal is unlikely in the reasonably foreseeable future because Israel will not issue him travel documents, Palestine is not a recognized state, and Jordan will not

accept him. Pet. 6, 11. Madhoun also points to the ongoing "situation between Palestinians and Israel." Reply 1; Pet. ¶ 17, Case No. 3:25-cv-351-KC. ICE counters that a TD request is currently pending with Israel, and ICE expects to obtain them soon or it will ask additional countries to accept him. Resp. 7.

At this juncture, more information is necessary to determine whether Madhoun's removal is likely to occur within the reasonably foreseeable future.

### III.   CONCLUSION

Accordingly, the Court **ORDERS** that Respondents shall provide a status report **by no later than November 3, 2025**, detailing the following:

(1) the status of the request for travel documents for Madhoun with Israel;

(2) whether in calendar year 2025, any requests for travel documents on behalf of Palestinian nationals have been made to Israel, and if so,

   a. how many such requests were made;

   b. what percentage, if any, have been granted; and

   c. for any granted requests, the time between request and approval;

(3) the status of any third country removal efforts, including but not limited to whether any requests for travel documents have been made with other countries on Madhoun's behalf and whether, when, and to which countries any additional requests will be sent; and

(4) any other efforts by Respondents to remove Madhoun from the United States.

**SO ORDERED.**

SIGNED this 2nd day of October, 2025.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE